IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA RODRIGUEZ-FERNANDEZ<br>Plaintiff<br>vs<br>FIRST MEDICAL HEALTH PLAN, INC.;<br>FIRST PLUS, INC.;<br>JOSE PAGAN;<br>CARLOS PAGAN;<br>INSURANCE COMPANY XYZ<br>Defendants | CIVIL 08-1787CCC |

**OPINION AND ORDER**

The action before us, filed by María Rodríguez-Fernández pursuant to the Americans with Disabilities Act (ADA) 42 U.S.C. §12101, et seq., and supplemented by state law, is based on alleged acts of disability discrimination and retaliation. Now before the Court is her employer, First Medical Health Plan, Inc. (First Medical) and two superiors, Carlos Pagán and José Pagán's Motion for Summary Judgment (**docket entry 26**),[1] which plaintiff has opposed (docket entry 36).[2]

Plaintiff avers that she has suffered from rheumatoid arthritis since 1996, which was known to First Medical when it hired her in 2000 (¶¶10,12). She alleges that on March 20, 2007, defendant José Pagán, First Medical's Vice President, told her that company personnel, including co-workers and subcontracted security guards, could no longer bring her wheelchair to her vehicle or otherwise assist her in going to and from her workstation, which was the customary practice, but that she could have her consensual partner assist

---

[1]See, also, defendants' Statement of Uncontested Material Facts (docket entry 27); Memorandum in Support of Motion for Summary Judgment (docket entry 29) and Certified Translations (docket entry 35).

[2]See, also, Plaintiff's Response to Memorandum of Law (docket entry 37), Response to Statement of Uncontested Facts (docket entry 38), and Certified Translations (docket entry 42).

her. She claims that despite repeated requests for this assistance, defendants refused to issue such a directive. As a result of this conversation, she filed a petition the next day with the Office of the Solicitor of Persons with Disabilities (OPPI)[3] of the Commonwealth of Puerto Rico complaining about the alleged policy and requesting an inspection of the premises to order changes to accommodate her disability. Two days thereafter she filed a charge with the Equal Employment Opportunity Commission (EEOC) based on her employer's alleged refusal to allow coworkers to help her. The EEOC issued a right-to-sue letter on August 31, 2007.

Rodríguez-Fernández further alleges that, as a result of her having filed the 2007 EEOC complaint, defendants engaged in a pattern of retaliation against her (¶20). She claims that Carlos Pagán, one of her superiors, gave orders that the work she was doing on a daily basis not be assigned to her, and states that "the retaliatory practices continue to this date."[4] She also avers that defendant Pagán[5] inquired as to what her future plans were and remarked that she should file for disability and retire or resign. Plaintiff filed a second EEOC charge on April 17, 2008, based on the alleged retaliation and comments made to her, for which the notice of right to sue was issued on May 21, 2008.

## I. Summary Judgment Standards

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is

---

[3]The acronym comes from its name in Spanish, "Oficina del Procurador de Personas con Impedimentos."

[4]This allegation is made in her July 8, 2008 complaint now before us notwithstanding that she had left her employment with First Medical due to her disability six months earlier, in January, 2008.

[5]Rodríguez Fernández does not identify which defendant Pagán–José or Carlos– made the comments.

entitled to a judgment as a matter of law." Rule 56 of the Federal Rules of Civil Procedure; Sands v. Ridefilm Corp., 212 F.3d. 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d. 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala,124 F.3d. 298, 306 (1st Cir. 1997). The non-moving party must establish the existence of at least one relevant and material fact in dispute to defeat such a motion. Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989).

The purpose of a summary judgment motion is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts University, 976 F.2d 791,794 (1st Cir. 1992). The Court must look at the record in the light most favorable to the non-moving party; however the Court need not rely on unsubstantiated allegations. To defeat a motion for summary judgment, evidence offered by non-movant "must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d. 32, 40(1st Cir. 2008); Pérez v. Volvo Car Corp., 247 F.3d. 303, 317 (1st Cir. 2001). We may ignore "conclusory allegations, improbable inferences and unsupported speculation. Prescott, at 40.

A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation. The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'' [A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

That is, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material. See, Daury v. Smith, 842

F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [...]." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

On issues where the non-movant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is "merely colorable" or "not significantly probative." Rather, the non-movant must present definite, competent evidence to rebut the motion. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993), citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Feliciano v. El Conquistador, 218 F.3d 1(1st Cir. 2000); Medina Muñoz v. R.J. Reynold Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Therefore, the non-moving party's failure to advance evidence establishing the essential elements of the cause of action, and for which they have the burden of proof, warrants the dismissal of the case through summary judgment. Celotex v. Catrett, 477 U.S. 37 (1986).

## Undisputed Facts

Rodríguez-Fernández, in her Response to Defendants' Statement of Undisputed Facts (docket entry 38), has, in fact, accepted 103 of defendants' 136 statements, identifying them as "uncontested." Therefore, the following is a narration of the primary undisputed facts, and where a fact is contested, it will be identified and discussed, if necessary.

Plaintiff was diagnosed as having rheumatoid arthritis in 1996. UF 6.[6] From June, 2000 and during her entire employment at First Medical she held the position of an Accounts Receivable Officer. UFs 10, 17. Soon after she began working with First Medical,

[6] Defendants' Uncontested Facts.

she was assigned to one of its biggest accounts–the Puerto Rico Department of Education (Education) UF 13. The essential functions of her job, included such duties as making multiple monthly visits to Education to analyze the account, monitoring clients' debts, drafting and mailing letters to clients regarding their due accounts, answering the telephone, data entry, making copies, filing records and physically delivering bills to clients. UF 14. Rodríguez-Fernández' duties and responsibilities were similar to those of other accounts receivable officers. UF 16.

During 2005-2006, Rodríguez Fernández' physical condition became such that she was not able to walk for any extended period of time. UF 37. Because of her physical condition she could not keep up with the Education account and, with her approval, she was taken off that account in 2005, and assigned to smaller accounts. UFs 22-24. The change in her assignments did not involve any decrease in salary or loss of benefits. UF 25. Plaintiff further acknowledged that around 2005 defendant Carlos Pagán, *motu propio,* provided her with a walker to accommodate her walking difficulties and moved her to a more spacious cubicle that was the closest one to the elevator, copier, and women's restroom. He also assigned her a handicapped parking space even before she had a permit for such parking. UFs 30-34. In 2006, the employees of First Medical donated a wheelchair to plaintiff, even though she had not requested such an accommodation. UFs 38-39.

Plaintiff admitted that her co-workers or security guards would push her to her work station and back to her vehicle. UF 40. Her co-workers even assisted her in going to the restroom. UF 41. When the elevator malfunctioned or there was a power outage, the security guards and employees physically carried her up and down the stairs. UF 42. None of her coworkers were ever disciplined or reprimanded for assisting her in whatever she needed. UF 43.

Plaintiff further acknowledged that around the beginning of March, 2007, Mr. Raymond Salamán, Director of Operation for Contract Security, the company contracted to

provide security services to First Medical, informed José Pagán that he was concerned because the security guards were worried about their backs, plaintiffs' safety, and their own safety when they had to transport her to her work area. Even though the security guards complained, they continued to transport Rodríguez-Fernández until she left her job and were always at her full disposal to assist in whatever she needed. UFs 65-67. It is also uncontested by plaintiff that First Medical requested a legal opinion as to whether an accident where an employee would get hurt while carrying plaintiff would be covered by Puerto Rico's State Insurance Fund and was told that its employees and the security guards would not be covered for such accidents. UF 68.

Rodríguez-Fernández still contests the statements that José Pagán never ordered Salamán that the security guards were prohibited from assisting or transporting plaintiff to her work area or assisting her in any way. UFs 69-71. At pages 165-67 and 169 of her deposition, plaintiff claims that she was told by security guards that they could not help her because it was at their own risk, and they had been given a letter saying they could not help her. Plaintiff, however, could not identify the guards who purportedly told her this, she did not have, nor had she seen, a copy of the purported letter.

> In Dávila v. Corporación de Puerto Rico Para la Difusión Pública, 498 F.3d 9 (1st Cir. 2007), the plaintiff relied on an affidavit stating that others had told him that his supervisor considered him too old for the job. But the plaintiff did not offer an affidavit from any person who actually heard the alleged statement. Given this omission, we ruled that the statement was hearsay under the Fed.R.Evid. 801( c) and reiterated that is black-letter law that hearsay cannot be considered on summary judgment.

Bennett v. Saint-Gobain Corp., 507 F.3d 13, 28-29 (1st Cir. 2007). See also, Montfort-Rodríguez v. Rey Hernández, 504 F.3d 221 (1st Cir. 2007); Dávila v. Corporación de Puerto Rico Para la Difusión Pública, 498 F.3d 101 (1st Cir. 2007).

Rodríguez-Fernández has admitted that the security guards and co-workers continued assisting and transporting her and were always at her full disposal to assist in whatever she needed, UF 67, until she left from her job on an extended disability absence

and never returned. Plaintiff also accepts that neither Contract Security nor First Medical ever reprimanded any security guard or her co-workers for assisting or transporting her, UFs 72, 88, 89.

Prior to 2007, plaintiff never made a request for accommodations that was not granted her. UF 45. José Pagán even intervened on her behalf to persuade the health insurance plan to pay for medical treatment and medicines that were not covered by the health plan. UF 46. In April 2006, First Medical decided to move its main operations, which included the Accounts Receivables Department from Carolina to Guaynabo, Puerto Rico. UF 47. Plaintiff requested to stay in the Carolina office. UF 50. First Medical granted plaintiff's request because it would shorten her travel time from her home. UF 52. She was the only Accounts Receivable employee to stay in Carolina. UF 51. This option was not given to any other First Medical employee, even those who had longer commutes to and from their homes. UF 53.

Plaintiff avers in her complaint at ¶¶13-16:

> It became a customary practice at her place of employment that when Ms. Rodríguez Fernández arrived [at work], security guards and/or office co-workers would bring her the wheelchair to her car and help her to her workstation. In the afternoons the same process was repeated in the opposite direction.
>
> However, on or about March 20, 2007 Mr. José Pagán, Vice President of First Medical, told her during a meeting that office personnel, including security guards or co-workers would not bring her the wheelchair to her car nor help her going to and from her workstation to her vehicle. Instead, they told her that if she wanted to they would allow her consensual partner, Mr. Edwin Marin, to do this.
>
> Ms. Rodríguez Fernández engaged the company in trying to solve the problem because their offer to allow Mr. Marín to assist her was not a viable, permanent solution.
>
> Despite repeated requests to the company that her co-workers be allowed to help her, defendants, including Mr. Pagán, refused to issue such a directive.

The alleged failure of her employer to direct its employees and/or the security guards to transport her between her parked vehicle and her work area form the basis of her first EEOC discrimination charge dated March 23, 2007.

Although plaintiff contests defendants' statement that as time passed her degenerating arthritis worsened to the point where she could not perform all the essential functions of her job, UF #20, she not only admits that during 2005, 2006, and 2007 she was absent 129 days, 124 days, and 128 days, respectively, UFs 57-59, but also that by January 2008 she had applied for disability benefits from the Social Security Administration based solely on her physical conditions–rheumatoid arthritis, thyroid, and anemia. UFs 127, 128.

UFs 127-135 document plaintiff's January, 2008 application for Social Security disability benefits (SSDI) and the record of her work-related medical findings, all of which Rodríguez Fernández accepts. A Social Security Disability Examiner, rheumatologist Dr. Carlos Pantojas, provided the following report of her October 21, 2008 evaluation:

> **At present patient could have problems for long, sustained sitting. Patient cannot stand on her own, Patient cannot walk, She came in a Wheelchair. Patient cannot lift, carry or handle objects**. No problems hearing or speaking. Patient cannot travel alone. There is joint enlargement on wrists and hands. There is diffuse joint pain, tenderness and stiffness. There are joint deformities on hands and wrists. No gross motor or sensory loss. Knee exam with crepitus and decreased ROM. Stress test and compression test, positive. Patient has lost most of her hand function. There is decreased grip and fingering strength. There is no overt atrophy, but there is Boutonniere's and swan-neck deformities with decreased ROM of wrists, MCPs, PIPs and DIPs.
>
> **Plaintiff was found not able to grip, grasp or pinch with either hand**. Further, she was found to be limited in the simple tasks of buttoning her shirt and picking up a coin with either hand. Plaintiff was even found to be limited in ability to write with her right hand. **Overall the Social Security Disability Examiner found Plaintiff not able to perform functions with her hands in a sustained manner**.

Defendants's Exhibit 22, (docket entry 27) (our emphasis), UFs 130-134.

Dr. Pantojas' evaluation states that she has chronic, disabling, rheumatoid arthritic changes in both hands and wrists, and diagnoses it as "Rheumatoid arthritis, stage 3-4, severe." Plaintiff was granted SSDI.[7] Rodríguez-Fernández accepted that her current physical conditions had remained unchanged since 2007. UF 135.

**Analysis**

Exhaustion of Administrative Remedies

Defendants' first ground for dismissal is plaintiff's alleged failure to exhaust administrative remedies, as required by the ADA. 42 U.S.C. §12117(a), incorporating by reference §2000e-5, provides for bringing a civil action against the respondent named in the EEOC charge. Defendants point out that Rodríguez-Fernández brought her two EEOC complaints only against "First Plus" a non-existent corporate entity. Neither of her charges mentions First Medical, José Pagán or Carlos Pagán as a party against whom the charges are brought.[8] Rodríguez-Fernández argues at pp. 2-3 of her opposition that the charge filed April 17, 2008 included a supporting letter which specifically identifies all defendants and their alleged acts, on which her claims are based.

The filing of the administrative charge, however, is not jurisdictional, but more akin to a statute of limitations and, therefore, subject to equitable exceptions. See, Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982). The Court of Appeals for the First Circuit has stated that "time limitations are important in discrimination cases, and that federal courts

---

[7]Id., Plaintiff's Answers to Interrogatory, Ex.21, ¶15.

[8] The first charge states only that she was prohibited her from asking the guards or co-workers for assistance, and that she was awaiting the results of OPPI's inspection. The second charge contains a letter from her attorney more or less stating the same alleged facts found in the complaint.

should employ equitable tolling sparingly." Bonilla v. Muebles J.J.Alvarez, Inc., 194 F.3d. 275, 278 (1st Cir. 1999).

We need not dwell on the exhaustion of administrative remedies as to the individual defendants, however. Although the Supreme Court and the First Circuit have yet to address whether or not there is individual liability under the ADA, this district has followed the majority of circuits that have confronted the issue and held that no personal liability can attach to employees under the ADEA or ADA. Vélez Cabrera v. Autos del Caribe, 2010 WL 188454 (D. Puerto Rico 2010) citing Reyes v. Valdés, No. 09-1333, slip. Op. at *9-10 (D.P.R. March. 22, 2010); Otero Merced v. Preferred Health, Inc., 68 F. Supp. 2d 388, 391-92 (D. Puerto Rico 2010); Vázquez Vázquez v. Checkpoint Systems of Puerto Rico, Inc., 609 F. Supp. 2d 217, 218 (D. Puerto Rico 2009); Del-Villar Rosario v. Puerto Rico Dept. of Justice, 573 F. Supp. 2d 496, 503 (D. Puerto Rico 2008).

With regard to plaintiff's failure to properly identify her employer's name, we must examine the facts. It is undisputed that Rodríguez-Fernández was an employee of First Medical, which acknowledges that, while First Plus is not a corporation, it is one of First Medical's products. UF 3. From First Medical's letterhead on which José Pagán's April 9, 2007 letter to plaintiff is written, its physical address is Carr. #3, Barrio Canovanillas, Carolina, Puerto Rico, the same address used on plaintiff's EEOC charges. Additionally, her petition filed with OPPI, defendants' Ex. 12, which also identifies her employer as First Plus, provides as its address the same one given on the letterhead as First Medical's post office box address.

In its statement of uncontested facts, the employer essentially recognizes that Rodríguez-Fernández' OPPI petition was directed to First Medical. See, e.g., UFs 90, 91, 94, 97 and 98. There is no evidence that First Medical suffered any prejudice by the error; the employer does not argue that it did not receive notice of the EEOC charges or that it did not participate in the proceedings. See, De Los Santos, v. UBS Financial Services, 2010

WL 936150, *3 (D. Puerto Rico). We, therefore, conclude that First Medical received the notice and other correspondence related to the EEOC charges and that it knew that it was the correct defendant as her employer, and, therefore, consider the administrative remedies exhausted as to it.

## Disability Discrimination Claim

In the first paragraph of her complaint, plaintiff describes this action as one "for alleged acts of disability discrimination and retaliation against [her]." A closer look at the first EEOC charge reflects that the actual claim is one for failure to accommodate her disability. The charge specifically states:

> On March 20, 2007, Mr José Pagán barred me from asking for help from the security guards and other co-workers, the help in no way interrupts the co-workers and the guards' tasks. At this time I am awaiting the results of an inspection by the ombudsman for persons with disabilities. In the meantime I am asking for the help that I have had for the past few years.

As can been seen from her EEOC charge, the issue is actually an alleged failure to accommodate her by assisting her to and from her workstation. The result for which she was waiting, which is also mentioned in the administrative charge, dealt with an inspection related to other requested accommodations.

A "failure-to-accommodate" claim has a different set of requirements from the "disability-discrimination" claim. To survive summary judgment on her "failure to accommodate," plaintiff must:

> (a) furnish sufficient admissible evidence she is a qualified individual with a disability within the meaning of the ADA;
>
> (b) establish that she worked for an employer covered by the ADA;
>
> (c) demonstrate that the employer, despite its knowledge of the employee's limitations, did not accommodate those limitations; and, and

> (d)) show that the employer's failure to accommodate the known limitations affected the terms, conditions or privileges of the plaintiff's employment.

Orta Castro v. Merck, Sharp & Dome Quimica P.R. Inc., 447 F.3d. 109, 112 (1st Cir. 2006); See, also, Tobin v. Liberty Mutual Insurance Co., 433 F.3d. 100, 107 (1st Cir. 2005); Estades Negroni v. Associates Corp. of North America, 377 F.3d. 58 63, 377 F.3d. 58, 63 (1st Cir. 2004).

42 U.S.C. §12102(1)(A) defines "disability" for purposes of the ADA , and the facts of the case before us as "a physical or mental impairment that substantially limits one or more major life activities of such individual." Major life activities for purposes of the ADA include performing manual tasks, walking and standing. Section 12102(2)(A). Based on the above-stated uncontested facts, Rodríguez-Fernández' disability, and her employers knowledge of it, is undisputed. She suffered from rheumatoid arthritis, a disability within the meaning of the ADA, which affected her ability to walk. She was already suffering from rheumatoid arthritis when she was hired and by 2006 she was using a wheelchair because she could no longer walk.

Other than her own conclusory opinion that she was able to perform the essential functions of the job with or without reasonable accommodation, plaintiff has provided no evidence to demonstrate that she could, in fact, perform them. The uncontested evidence in the record does not support this contention. "At the risk of stating the obvious, attendance is an essential function of any job." Ríos-Jiménez v. Principi, 520 F.3d. 31, 42 (1st Cir 2008). See, also, Mulloy v. Acushnet, 460 F.3d. 141, 148 (1st Cir. 2006) ("Regular attendance is an essential function of most jobs.") Waggoner v. Olin Corp., 169 F.3d. 481, 485 (7th Cir. 1999) ("an employee who does not come to work cannot perform the essential functions of his job.") As this court recently stated in González Rodríguez v. Potter 605 F.Supp. 2d 349, 367-68 (D.Puerto Rico 2009):

> It is well settled that an employer need not accommodate a disability by foregoing an "essential function" of the employment position.... An employee with excessive absences related to a claimed disability was not a qualified individual. Gross attendance problems can prevent a disabled person from being qualified for a position even when the attendance problem is related in whole or in part to the disability....
>
> It is undisputed that González had been missing work due to her illness, in fact, by her own admission she was absent at least twelve times within the first three months of 2006. Even if her absenteeism was tied to her illness, her inability to come to work on a more regular basis is a legitimate concern for her employer. Simply put, one who does not come to work cannot perform any of his job functions, essential or otherwise.

(Citations omitted.)

Plaintiff has admitted that in the last three years of her employment she was absent more than 100 days each year, that is, 129 days in 2005, 124 days in 2006 and 128 days in 2007. Calculating 52 weeks at 5 workdays per week, not reducing the total for vacations and holidays, there are 260 work days per year. Plaintiff's absences represent approximately 40% of the work time. Rodríguez-Fernández' last day physically working for First Medical was January 8, 2008. She never returned to work, nor did she respond to a letter from First Medical seeking to coordinate her return from her extended absence and eventually, on June 16, 2008, her position was declared vacant. See, UF 120 defendants" Docket entry 27, Ex.1, ¶23, José Pagán's Unsworn Declaration Under Penalty of Perjury. She has neither demonstrated nor argued that her presence at work is not essential to do her job, nor does the record reflect that the earlier medically-related absences improved her attendance later. Therefore, she was not a "qualified individual with a disability." See also, Greer v. Emerson Electric Co., 185 F.3d 917 (8th Cir. 1999) (plaintiff was not a "qualified individual with a disability" under the ADA based upon absences of 67 days of work in 1993, 65 days in 1994, and 110 days through September 15, 1995); Nesser v. Trans World Airlines, 160 F.3d 442, 445 (8th Cir. 1998) (plaintiff not a "qualified individual with a disability"

under the ADA based upon absences of 6 days of work in 1993, 43-44 days in 1994, and 175 days in 1995).

For the above-stated reasons, we conclude that plaintiff was not a "qualified individual with a disability" under the ADA and, therefore, she does not have a claim for employment discrimination under this statute.

**Retaliation Claim**

Rodríguez-Fernández' second claim alleges that she suffered retaliation as a result of having filed her first EEOC charge. To establish a claim of retaliation under the ADA, a plaintiff must show (1) that she engaged in protected conduct; (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. Carreras v. Sajo, García & Partners, 596 F.3d. 25, 35 (1st Cir. 2010), Dressler v. Daniel, 315 F.3d. 75, 78 (1st Cir. 2003).

Plaintiff's protected conduct in filing of an EEOC claim is undisputed. Rodríguez-Fernández alleges that, as an "adverse employment action" she was hardly assigned work after she filed the 2007 EEOC claim.[9] Although Rodríguez-Fernández denied that the deterioration in her physical condition was what triggered the changes and reduction in her work assignments, she accepted the following as correct essential duties of her position: visiting clients, monitoring clients' debts, drafting and mailing letters to clients regarding their due accounts, answering the telephone, data entry, making copies, filing records and physically delivering bills to clients. UF 14. Arguendo, for purposes of this motion, that plaintiff has made out a prima facie case of retaliation, "the burden shifts to the employer

---

[9]Whether or not Rodríguez-Fernández could be characterized as Ramírez' right hand, is irrelevant and immaterial. She provided no evidence that distinguished her responsibilities from those of other accounts receivable officers and accepted that her duties were similar to theirs.

to articulate a legitimate, non-discriminatory reason for its employment decision. Carreras v. Sajo, García &Partners, 596 F.3d. 25, 36 (1st Cir. 2010).

> The employer's burden is one of production, not persuasion. If the employer produces a legitimate reason for its decision, the burden under *McDonnell Douglas* shifts back to the plaintiff to show that the motive was discriminatory [or retaliatory]. Thus, the plaintiff bears the ultimate burden to create a plausible inference that the employer had a retaliatory motive.

Id. (Citations omitted.)

Besides her chronic and excessive absenteeism, defendants rely on her acknowledged physical deficiencies as outlined in the medical report related to her application for SSDI. As stated by the United States Supreme Court,

> The application for or the receipt of social security disability benefits creates a *rebuttable* presumption that the claimant or recipient of such benefits is judicially estopped from asserting that he is a qualified individual....
>
> The individual's impairment . . . must be of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 800-801 (1999). (Citations omitted) (emphasis in the original.) The Court went on to state:

> [A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case–at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

Id. at 805.

The Court explained that to survive a defendant's motion for summary judgment, plaintiff must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation." Id. at 799.

When we consider plaintiff's physical limitations, as delineated by the Social Security examiner, supra, at 11, that is, her inability to stand or walk, to sit for prolonged periods and to perform functions in a sustained manner using her hands, as well as her acceptance of the fact that these conditions had not changed since 2007, UF 135, it is clear that her ability to visit clients, draft and mail letters to clients regarding their due accounts, enter data, making copies, file records and physically deliver bills to clients, using computers, photocopiers, fax and adding machines and printers, as required for her position[10], was severely or completely restricted since that time.

Also important in the determination of her retaliation claim that after her August 2009 EEOC claim she has hardly been given any tasks to carry out, is Rodríguez-Fernández' own acceptance of Ramírez' explanation for the changes in her assignments, as presented in the statement of uncontested facts: "[d]ue to the number of plaintiff's absences and the unpredictability of said absences, First Medical could not assign her work that would be expected to take an extended amount of time to complete," and that "the work that was assigned to plaintiff was that which she could finish relatively fast because of the uncertainty of whether she would be able to continue to work in the coming days." UFs 104, 105.

The obvious contradiction between plaintiff's SSDI claim of total disability based on the medical conditions existing since 2007 vis a vis the assertions set forth in her ADA complaint, was set forth in First Medical's memorandum in support of its motion for summary judgment. This notwithstanding, Rodríguez-Fernández made no reference to the fact that she alleged to the Social Security examiner that her condition was the same as it was in 2007, nor gave any explanation of the contradiction regarding her ability to work in her ADA claim and her Social Security claim asserting that she was unable to do her previous work

---

[10] See, First Medical's Exhibit 6, English translation docket entry 35, plaintiff's job description.

at First Medical or any other kind of work. Rodríguez-Fernández has not met her ultimate burden to establish that defendant had a retaliatory motive for the change in the assigning of tasks related to her position. In sum, besides her conclusory statement that her assignments changed because of retaliation since August 2007, she has not presented evidence to support that contention.

**Hostile Environment Claim**

Plaintiff'‘s third cause of action alleges that "[t]he conduct displayed by the defendants, as alleged heretofore, constitutes unwelcome harassment severe and pervasive enough to create a hostile work environment for the plaintiff." Complaint at ¶36. Plaintiff, however, has failed to comply with the pleading standard of Iqbal v. Ashcroft,129 S.Ct. 1937 (2009), which requires specific identification of facts in support of each claim, as opposed to her vague and generic pleading–"Plaintiff re-alleges paragraphs 1 through 34 of this Complaint"–at ¶35, followed by the legal conclusion of a "hostile work environment."

Moreover, in her memorandum in opposition to the motion for summary judgment, plaintiff makes no reference to defendants' challenge to this cause of action. Issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

For the above-stated reasons, we find that plaintiff Rodríguez-Fernández has failed to prove (1) a prima-facie claim of disability discrimination based on a failure to accommodate her disability, (2) retaliation for having filed the March, 2007 EEOC charge against her employer, and [has waived] (3) her claim for retaliation. Inasmuch as plaintiff's claims under state law are based on the same facts and theories, the factual basis for them

is also inadequate. Accordingly, the defendants' Motion for Summary Judgment (**docket entry 26**) is GRANTED, and the complaint is DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, on December 10, 2010.

S/CARMEN CONSUELO CEREZO
United States District Judge